# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 00-CR-10059-EFM

LARRY JERMAINE BATTLE, JR.,

    *Defendant.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Larry Jermaine Battle, Jr.'s Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c) (Doc. 303). He seeks early release from prison due to the COVID-19 pandemic, an alleged sentencing disparity, and his rehabilitative efforts while in prison. The government opposes Defendant's motion. For the reasons stated in more detail below, the Court denies Defendant's motion.

### I.    Factual and Procedural Background

On November 13, 2000, Defendant was convicted by a jury of two counts: (1) obstruction of commerce by robbery, in violation of 18 U.S.C. § 1951 ("Hobbs Act Robbery"); and (2) use of a firearm during and in relation to a crime of violence which resulted in murder, in violation of 18

U.S.C. §§ 924(c)(1) and (j)(1).[1]  On May 9, 2001, Defendant was sentenced to a controlling term of life imprisonment as he was sentenced to 240 months on Count 1 and life imprisonment on Count 2, to run consecutively to Count 1.

On May 8, 2002, the Tenth Circuit Court of Appeals reviewed Defendant's conviction and sentence.[2]  Defendant asserted several reasons for reversal of his conviction and sentencing. Relevant to the current motion pending before the Court, the Tenth Circuit upheld his sentence. Specifically, the circuit found that § 924(j) did not set forth an aggravated crime different from § 924(c).[3]  Instead, the Tenth Circuit determined that § 924(j) set forth a sentencing enhancement, and § 924(c)'s unambiguous mandate to impose a consecutive sentence was applicable when the aggravating sentencing factors were met under § 924(j).[4]  Furthermore, the circuit found that the construction of § 924(c) and § 924(j) authorizing consecutive sentences did not violate the Double Jeopardy Clause.[5]  Thus, the Tenth Circuit upheld Defendant's consecutive sentence of 240 months and life imprisonment.

Defendant filed a postconviction petition under 28 U.S.C. § 2255, which was denied.  The Tenth Circuit denied Defendant a certificate of appealability and dismissed his § 2255 appeal.[6]

---

[1] This case was originally before Judge Marten.  The case was reassigned to the undersigned on May 10, 2021, due to Judge Marten's retirement.

[2] *United States v. Battle*, 289 F.3d 661 (10th Cir. 2002), *overruled in part by United States v. Melgar-Cabrera*, 892 F.3d 1053 (10th Cir. 2018).

[3] *Id*. at 666.

[4] *Battle*, 289 F.3d at 667-68.

[5] *Id*. at 669.

[6] *United States v. Battle*, 133 F. App'x 546 (10th Cir. 2005).

Defendant filed another § 2255 on December 31, 2012, and in 2013, this Court and the Tenth Circuit denied Defendant's request to file a successive § 2255 motion.

On June 8, 2018, the Tenth Circuit issued its opinion in *United States v. Meglar-Cabrera*.[7] Specifically, the Tenth Circuit found that § 924(j) is a discrete crime rather than a sentence enhancement.[8]  Thus, the circuit explicitly overruled its previous position in *Battle*.[9]

Due to the *Meglar-Cabrera* decision, Defendant moved the Tenth Circuit to recall the mandate in his appeal and sought to re-open his proceedings.  The Tenth Circuit determined that since the motion to recall sought to argue the merits of its previous decision in *Battle*, it presented a claim under § 2255.[10]  The circuit, however, determined that it would not authorize Defendant to file a successive § 2255 because although he relied on new Tenth Circuit law, *Meglar-Cabrera*, it was not a new rule of constitutional law made retroactive to cases on collateral review by the United States Supreme Court.  Thus, the circuit denied Defendant's motion.

Defendant is 45 years old, and he is currently incarcerated at FCI Pollock.  Currently, there are no active COVID-19 inmate cases, two active staff cases, and no pending inmate tests.[11]  At Pollock, 287 staff members and 1542 inmates have been fully vaccinated.[12]  As of March 30, 2021, Defendant received his second vaccine, and he is fully vaccinated.  Defendant does not have a projected release date as he is imprisoned for life.

---

[7] 892 F.3d 1053 (10th Cir. 2018).

[8] *Id*. at 1060.

[9] *Id.*

[10] Doc. 305-2, *United States v. Battle*, Tenth Circuit Case No. 01-3154, October 7, 2019 Order.

[11] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 29, 2021).

[12] *Id.*

On May 11, 2021, Defendant filed a motion seeking early release from prison, asserting that three reasons, collectively, demonstrate extraordinary and compelling circumstances.[13] These include: (1) underlying health conditions and the COVID-19 outbreak in prison; (2) a disparity in the application of his prison sentence; and (3) exemplary rehabilitation efforts in prison for the past 21 years.  The government opposes Defendant's motion.

## II.     Legal Standard

The First Step Act amended the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), to allow a defendant to file his own motion for release.[14]  It allows defendants to seek early release from prison provided certain conditions are met.  First, a criminal defendant may file a motion for compassionate release only if: (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf;" or (2) 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[15]  The administrative exhaustion requirement cannot be waived.[16]

If a defendant satisfies the exhaustion requirement, the Tenth Circuit has set forth a three-part test for district courts to use when deciding a defendant's motion.[17]  This test requires the

---

[13] Defendant is represented by counsel.

[14] *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[15] 18 U.S.C. § 3582(c)(1)(A).

[16] *United States v. Johnson*, --- F. App'x ---, 2021 WL 1053706, at *2 (10th Cir. 2021) (holding that the exhaustion requirement in § 3582(c)(1)(A) is mandatory and not judicially waivable).  *See also United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence); *United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1116-17 (D. Kan. 2020) (examining the text, context, and historical treatment of § 3582(c)'s subsections to determine that the exhaustion requirement is jurisdictional).

[17] *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021) (discussing and employing the same three-part test).

Court to consider whether (1) "extraordinary and compelling reasons" warrant the sentence reduction; (2) "such reduction is consistent with *applicable* policy statements issued by the Sentencing Commission;" and (3) any reduction is consistent with the applicable sentencing factors set forth in 18 U.S.C. § 3553(a).[18] The Tenth Circuit also recently clarified that the Sentencing Commission's existing policy statement is not applicable to motions filed directly by defendants.[19] If the Court denies the motion because the defendant fails to meet one of the prerequisites, it may do so without addressing all the factors.[20] If, however, the Court grants the motion, the Court must address all three steps.[21]

### III. Analysis

Defendant seeks early release based on (1) underlying health conditions and the COVID-19 outbreak in prison; (2) exemplary rehabilitation efforts in prison for the past 21 years; and (3) a disparity in the application of his prison sentence. The government asserts that Defendant is not an appropriate candidate for early release.

**A. Exhaustion**

Defendant has satisfied the exhaustion requirement described in § 3582(c). He requested compassionate release from the Warden in January 2021 which was denied in March 2021. The

---

[18] *McGee*, 992 F.3d at 1042-43.

[19] *Maumau*, 993 F.3d at 837 (citations omitted) (noting that "the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants"). Essentially, the Tenth Circuit's three-part test is collapsed into a two-part test for motions filed directly by Defendants (which are the majority of the motions filed).

[20] *McGee*, 992 F.3d at 1043 (citation omitted).

[21] *Id*. (citation omitted).

government also concedes that Defendant meets the exhaustion requirement. Thus, the Court will proceed and determine the merits of Defendant's motion.

**B.      Extraordinary and Compelling Reasons**

"District courts, in carrying out the first step of § 3582(c)(1)(A)'s statutory test, decide for themselves whether 'extraordinary and compelling reasons' exist in a given case."[22]

*1.      COVID-19 Threat*

Defendant first asserts that his preexisting medical conditions, coupled with the COVID-19 outbreak in prison, constitute an extraordinary and compelling reason warranting release. Defendant, however, does not identify any underlying health conditions that make him more susceptible to COVID-19 complications.[23] Furthermore, Defendant is fully vaccinated, lessening his risk of serious complications should he contract COVID-19. Finally, although the transmission rate of COVID-19 used to be high in prisons, the BOP has taken measures over the past several months to control the pandemic and its effects in BOP facilities. Indeed, the facility in which Defendant is housed does not have any active inmate cases. Thus, Defendant's health conditions, or lack thereof, and the threat of COVID-19 do not present an extraordinary and compelling reason.

*2.      Rehabilitation Efforts*

Defendant contends that he has displayed a great degree of rehabilitation while in prison. He states that he has completed dozens of programs and courses with the goal of improving himself. Defendant also asserts that his rehabilitative efforts have resulted in a lowered security status and a transfer from a maximum-security institution to medium security. The Court

---

[22] *Maumau*, 993 F.3d at 833.

[23] Defendant states that he is an African-American male suffering from hypertension. His medical records from the BOP, however, do not show that he has hypertension.

recognizes that Defendant has made a commendable effort to rehabilitate and better himself while in prison. These efforts, however, do not demonstrate that Defendant is rehabilitated—instead, they simply show that he is making continuing, commendable efforts to better himself.[24] This factor, alone or in combination with the other two factors presented here, does not amount to an extraordinary and compelling reason warranting a reduction in his prison sentence.

   3.   *Sentencing Disparity*

Defendant's primary reason for requesting a sentence reduction is that his consecutive life sentence under § 924(j) is no longer authorized by current law because the jury was only asked to return findings as to the elements of § 924(c). Defendant contends that the disparity in the application of the law and punishment is particularly unjust in this case because he stands sentenced to a mandatory consecutive life imprisonment. The government asserts that Defendant is trying to use § 3582 as an "end run" around the bar on successive § 2255 petitions because the Tenth Circuit already denied Defendant's request to file a successive §2255 petition regarding this argument. Defendant disagrees and states that he is not attacking his conviction and sentence based on the holding in *Meglar-Cabrera* but rather because the extremely long sentence represents an unjust sentencing disparity.

Here, the Court notes that Defendant's argument does appear to be more akin to a § 2255 argument because he asserts that the *Meglar-Cabrera* decision overturned the basis for affirming

---

[24] The Court notes that 28 U.S.C. § 994(t) provides that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." This provision also provides that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" in promulgating general policy statements. *Id.* Although the Tenth Circuit's decision in *Maumau* instructs district courts that there are no applicable policy statements to consider when defendants file their own compassionate release motions, presumably, a district court must still follow Congress's directive in § 994(t) that rehabilitation alone is not "an extraordinary and compelling reason."

his mandatory consecutive life sentence. The Tenth Circuit already denied Defendant's previous motion to recall the mandate by stating that Defendant could not file a successive § 2255 because its *Meglar-Cabrera* decision was not a new rule of constitutional law made retroactive to cases on collateral review. The Court, nevertheless, will address Defendant's argument in the context of his § 3582 motion, but it still lacks merit.

     A disparity between a defendant's original sentence and a sentence that a defendant would now receive due to subsequent changes in sentencing procedures may be relevant when determining whether a defendant presents an extraordinary and compelling reason for a reduction of sentence under the First Step Act.[25] A sentencing disparity, however, "cannot, standing alone, serve as the basis for a sentence reduction under § 3581(c)(1)(A)(i)."[26] Instead, the court must consider a "combination of such a sentence" and the defendant's "unique circumstances."[27]

     Defendant fails to identify a combination of an unjust sentencing disparity and unique circumstances. First, although Defendant argues that he received an extremely long sentence and unjust disparity in sentencing under §§ 924(c) and 924(j), he does not identify the unjust disparity or what prison sentence he would now receive. Defendant would still be subject to the sentencing scheme under §§ 924(c) and 924(j). The elements of both provisions, however, would have to be proven as separate crimes instead of as a sentence enhancement. The jury convicted Defendant of the use of a firearm during and in relation to a crime of violence which resulted in murder, in

---

[25] *McGee*, 992 F.3d at 1047-48.

[26] *Id.* at 1048.

[27] *Id.*

violation of 18 U.S.C. §§ 924(c)(1) and (j)(1). Thus, the jury still found that Defendant's conduct resulted in the death of another.

In addition, Defendant does not identify any other particularly unique or individual circumstances relative to his case warranting a sentencing reduction. In the Tenth Circuit's *Maumau* opinion, the defendant noted numerous individual circumstances, including such items as the defendant's young age with no prior criminal record, that no one was physically injured as a result of his crimes, that his victim voiced support for sentencing relief, that his co-defendants received far more lenient sentences, that he had taken educational and wellness courses in prison, and that he had strong family support.[28] Here, Defendant states that the combination of his unjust sentence with the COVID-19 threat and his rehabilitative efforts in prison constitute an extraordinary and compelling reason warranting a reduction. As noted above, however, Defendant does not have any underlying health conditions and the threat of COVID-19 has abated in prison. In addition, Defendant's rehabilitative efforts in prison, even if considered exemplary, do not establish an extraordinary and compelling reason for release. In sum, these three factors, individually, and collectively, do not establish an extraordinary and compelling reason to reduce Defendant's life imprisonment sentence.

C.     **Section 3553(a) Factors**

Even if Defendant could establish an extraordinary and compelling reason, the § 3553(a) factors would not support a reduction in sentence.[29] Some of the factors to consider include the

---

[28] *Maumau*, 933 F.3d at 827.

[29] Because Defendant cannot establish an extraordinary and compelling reason for a sentence reduction, it is unnecessary to consider the third factor of whether any sentence reduction is consistent with the § 3553(a) factors. The Court, nevertheless, will address it.

nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentence disparities.[30]

Here, Defendant was sentenced to life imprisonment because he participated in a robbery and killed an individual during the commission of that robbery. Defendant and a co-Defendant entered a gas station in Wichita, Kansas, that was owned by Mr. Lee and his wife, Ms. Ho. Defendants wore bandanas that covered their faces. Mr. Lee was behind the counter, and Ms. Ho was in the back room. Ms. Ho watched the robbery on a television monitor connected to the store's security cameras.

Defendant had a short-barreled shotgun and ordered Mr. Lee to give them money from the cash register. While opening the register, Mr. Lee pressed the alarm button to summon the police. The co-Defendant jumped over the counter, took approximately $320, and ran out of the store. As Defendant backed out of the store, he ordered Mr. Lee not to move. Mr. Lee did not move, but Defendant fired the shotgun at Mr. Lee and struck him in the right upper torso. Mr. Lee died from his injury approximately three hours later.

The police responded to the alarms and followed footprints from the scene. They found Defendant and arrested him approximately two to three blocks away from the convenience store. When Defendant was arrested, he admitted that he had committed the robbery and shot Mr. Lee. He refused to identify his accomplice and stated that he shot Mr. Lee because he believed Mr. Lee moved toward him. Defendant went to trial and was convicted by jury on two counts: (1) Hobbs

---

[30] 18 U.S.C. § 3553(a).

Act Robbery, in violation of 18 U.S.C. § 1951, and (2) use of a firearm during and in relation to a crime of violence which resulted in murder, in violation of 18 U.S.C. §§ 924(c)(1) and (j)(1).

Defendant was sentenced on May 9, 2001. He had a Criminal History Category of II and a base offense level of 41.[31] Defendant was sentenced to a consecutive sentence of 240 months for the Hobbs Act violation and a consecutive life imprisonment for the §§ 924(c) and 924(j) offense.

The Court finds that the long sentence here does serve a purpose. It reflects the seriousness of the offense as Defendant killed an individual, Mr. Lee. In addition, Mr. Lee's wife watched the robbery and the shooting of her husband on a television monitor. Furthermore, the sentence promotes respect for the law and protects the public from future crimes by Defendant. Although Defendant has engaged in rehabilitative efforts while in prison, the sentence in this case is relative to the harm caused by Defendant. Thus, the Court finds that the life imprisonment sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense involved. Accordingly, the Court finds that Defendant does not demonstrate extraordinary and compelling reasons to warrant his early release from prison.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c) (Doc. 303) is **DENIED**.

---

[31] His base offense level was 43, but Judge Marten adjusted the base offense level by two points for acceptance of responsibility.

**IT IS SO ORDERED**.

Dated this 30th day of June, 2021.

                                          ERIC F. MELGREN
                                          UNITED STATES DISTRICT JUDGE